**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A. M. Holmes,<br><br>Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security,<br><br>Defendant. | No. CV-17-03360-PHX-DGC<br><br>**ORDER** |

Plaintiff A.M. Holmes seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is based on legal error, the Commissioner's decision will be vacated and the matter remanded for further administrative proceedings.

**I.    Background.**

Plaintiff is a thirty-two year-old female who previously worked as a caregiver, a cashier or checker, and a fast food worker. A.R. 28. On January 2, 2014, she applied for disability insurance benefits and supplemental security income, alleging disability beginning August 9, 2012. *Id*. On April 21, 2016, she appeared with her attorney and testified at a hearing before the ALJ. *Id*. A vocational expert also testified. *Id*. On May 23, 2016, the ALJ held that Plaintiff was not disabled within the meaning of the Social Security Act. *Id*. at 30. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. A.R. 1-3.

## II. Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability,

the claimant must show that (1) she is not currently working, (2) she has a severe impairment, and (3) this impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") prevents her performance of any past relevant work. If the claimant meets her burden through step three, the Commissioner must find her disabled. If the inquiry proceeds to step four and the claimant shows that she is incapable of performing past relevant work, the Commissioner must show at step five that the claimant is capable of other work suitable for her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2016, and that she has not engaged in substantial gainful activity since August 9, 2012. A.R. 19. At step two, the ALJ found that Plaintiff has the following severe impairments: tarsal tunnel involvement in the right lower extremity, degenerative disc disease, asthma, obesity, bipolar disorder, anxiety, and depression. *Id.* at 20. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.[1] *Id.* At step four, the ALJ found that Plaintiff has the following RFC:

> To perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can sit six hours out of an eight hour day. The claimant can stand for six hour[s] out of an eight-hour day. The claimant can walk for six hours out of an eight-hour day. The claimant can occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. The claimant can push and pull with the right lower extremity on an occasional basis only. The claimant can only occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can have only occasional exposure to heights, moving machinery, humidity, dust, fumes, smoke, temperature extremes and vibrations. The claimant can only understand, remember and carry out complex and detailed job

---

[1] The ALJ did not specifically address whether tarsal tunnel involvement in the right lower extremity met the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. But Plaintiff does not challenge this omission.

> instructions and can only occasionally interact with coworkers or the public.

*Id.* at 22. The ALJ further found that Plaintiff is unable to perform any of her past relevant work. *Id.* at 26. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that Plaintiff could perform, such as housekeeper or cleaner, delivery maker, and routing clerk. *Id.* at 28.

**IV. Analysis.**

Plaintiff argues that the ALJ's decision is defective for three reasons: (1) the ALJ failed to consider the assessments of Plaintiff's treating psychiatrist, S. Patel, M.D., and treating psychiatric nurse practitioner, Linda Banziger, N.P.; (2) the ALJ rejected Plaintiff's symptom testimony without specific, clear, and convincing reasons supported by substantial evidence in the record as a whole; and (3) the ALJ ignored Plaintiff's limitations in concentration, persistence, and pace when she determined Plaintiff's RFC.

**A. Weighing of Medical Source Evidence.**

Plaintiff argues that the ALJ improperly weighed the medical opinions of Dr. Patel and Nurse Practitioner Banziger.

**1. Legal Standard.**

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(1), (c).

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to

one of a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings," *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

An ALJ may discount the opinion of "other sources," such as a nurse practitioner, if she "provides reasons germane to each witness for doing so." *Popa v. Berryhill*, 872 F.3d 901, 905 (9th Cir. 2017) (citing *Molina*, 674 F.3d at 1111) (internal quotations omitted); *see also* 20 C.F.R. § 404.1513(a)(3). The same factors that are used to evaluate the opinions of medical providers should be used to evaluate other medical sources. *See Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *see also* § 404.1527(f).

### 2. Dr. Patel.

The ALJ failed to consider Plaintiff's treating psychiatrist's supplemental questionnaire regarding Plaintiff's RFC. *See* A.R. 752-53. The Commissioner concedes this was reversible legal error and that remand is warranted. *See* Doc. 19 at 2. Because the vocational expert opined that Dr. Patel's identified limitations could further restrict the jobs available to Plaintiff (A.R. 56), the Court cannot conclude that the error was harmless. The Court will remand for the ALJ to consider Dr. Patel's medical opinion.

### 3. Linda Banziger, N.P.

On April 7, 2014, Nurse Practitioner Linda Banziger, who treated plaintiff through Corazon Behavioral Health (*see* AR 734-47), completed an agency-provided assessment

form as Plaintiff's psychiatric nurse practitioner. *See* A.R. 590. She indicated that Plaintiff had been diagnosed with PTSD and Bipolar Disorder, medication was not effective in controlling Plaintiff's symptoms, and Plaintiff has significant limitations in basic work abilities due to poor concentration and mood variability. *Id*. Because Banziger is considered an "other source," her opinions can be rejected if the ALJ provides germane reasons. *Popa*, 872 F.3d at 905.

The ALJ afforded less weight to Banziger's opinion because she did not indicate what tests and clinical findings supported her answers. A.R. 26. The ALJ also found that an independent psychological examination by Dr. Patricia Johnson "provide[d] a more complete, thorough and well supported foundation upon which to base an opinion as to the claimant's mental functioning." *Id*. Additionally, the ALJ concluded that "Ms. Banziger's opinion that the claimant seemed unable to work [wa]s not specifically directed at the claimant's mental health, but instead seem[ed] more of a commentary on the claimant's physical allegations."[2] *Id*.

The ALJ erred by discrediting Banziger's opinion because it lacked supporting clinical findings or tests. The lack of clinical findings on a standard check-the-box form provided by an "other source" is not by itself a germane reason for discrediting the opinion. *Popa*, 872 F.3d at 907. Instead, the ALJ should consider the conclusions in light of the "other source's" treatment records with the Plaintiff. *Id.* (ALJ erred by not addressing accessible treatment records that supported the nurse practitioner's conclusions); *Revels*, 874 F.3d at 665 (the fact that the nurse practitioner examined the claimant ten times over two years is a strong reason to assign weight to her opinion). Here, Banziger used a check-the-box form provided by the Arizona Department of Economic Security; the form did not require lengthy explanations. A.R. 590. Banziger's statements are consistent with her treatment records, which state that Plaintiff has mood

---

[2] As noted in Plaintiff's reply brief, the ALJ confused Nurse Banziger's assessment with a letter provided by Rebecca Villa, Med, of Corazón Integrated Healthcare Services. In light of this error, the Court does not address the ALJ's findings related to Exhibit 14F. *See* A.R. 26; Doc. 18 at 13; A.R. 732.

swings and outbursts of anger, and suffers from PTSD and bipolar disorder. *See* A.R. 734, 738. The ALJ erred in discrediting Banziger's opinion because of a lack of supporting clinical findings.

Dr. Johnson's independent psychological evaluation is not by itself a germane reason to discredit Banziger's opinion. An inconsistency with the medical record can be a germane reason to discount an "other source" opinion so long as the ALJ explains the inconsistency. *Popa* 872 F.3d at 907. Here, Dr. Johnson provided a medical assessment of Plaintiff to determine whether she should try a spinal simulator. Dr. Johnson did not opine as to Plaintiff's specific limitations or work abilities; instead, Dr. Johnson's report presents clinical findings in relation to possible treatment, as well as a possible diagnosis of an adjustment disorder. *See* AR 398-401. The ALJ failed to explain why Dr. Johnson's evaluation contradicts Banziger's conclusions. Indeed, Dr. Johnson reported unspecified "vocational concerns," and that "Plaintiff appear[ed] to be suffering from an [a]djustment [d]isorder related to her industrial injury." A.R. 406. Without some explanation, the Court cannot find that the ALJ provided a germane reason for rejecting Nurse Practitioner Banziger's opinion.

Finally, the ALJ's conclusion that Banziger's work limitations were based on Plaintiff's physical condition rather than her mental health issues appears to be speculation. And it is contradicted by Banziger's references to Plaintiff's PTSD and bipolar disorder, and her indication that "poor concentration and mood variability" are the reasons Plaintiff's work abilities are limited. *See* A.R. 590. This is not a germane reason for discrediting Banziger's opinion.

Addressing Banziger's opinion, the vocational expert testified that an individual who had poor concentration and mood variability may have difficulty sustaining work due to off-task behavior. *See* A.R. 55. Thus, the ALJ's error was not harmless. The Court will remand for reconsideration of Nurse Practitioner Banziger's opinion.

**B.  The ALJ Did Not Err in Evaluating Plaintiff's Credibility.**

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015.

Plaintiff testified that her mental health issues keep her from working because she "gets a lot of anxiety[,] and it makes [her] more depressed because [she] can see everybody else and what they can do and [she] can't." A.R. 46. She stated that the depression makes her feel "worthless a lot of the time." *Id*. at 47. The anxiety makes her "feel sometimes [she] can't go on." *Id*. Plaintiff also testified that she does not want to be around anyone or do anything, and that her concentration is affected by the pain in her foot. *Id*.

The ALJ gave this description of Plaintiff's additional symptom testimony:

> The claimant testified that she suffered anxiety that interfered with her ability to interact with others. The claimant also testified that she experienced pain that limited her to twenty minutes of sitting at one time and difficulty lifting her young [b]aby. The claimant reported ongoing chronic pain and shortness of breath. The claimant testified that she felt worthless and had issues with her concentration and memory.

A.R. 23.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her statements "concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the

- 8 -

reasons explained in this decision." *See* A.R. 23. The ALJ then proceeded to summarize and afford weight to the various medical reports and opinions. *Id.* Plaintiff argues that the ALJ failed to provide any explanation of how this medical evidence discredits Plaintiff's mental health testimony. *See* Doc. 18 at 18. The Court disagrees.

When an ALJ discredits testimony, she may consider "ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may also consider observations by treating physicians regarding the frequency, nature, and severity of Plaintiff's symptoms. *Id.* In this case, the ALJ's summary of medical evidence identifies several inconsistencies that discredit Plaintiffs' symptom testimony. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

The ALJ noted several instances from Plaintiff's medical records that demonstrate her tendency to exaggerate symptoms and behave inconsistently with reported symptoms. A.R. 23-25. The ALJ identified several records where Plaintiff's foot appeared normal even though she reported severe pain and swelling. *See* A.R. 22-25. The ALJ noted reports that Plaintiff's claimed sensitives did not match her objective evaluations, MRIs and X-rays failed to show abnormal findings, and measurements failed to substantiate Plaintiff's report of lower extremity swelling. A.R. 24. The ALJ noted documentation that the Plaintiff used her foot despite reporting immobilizing pain. A.R. at 24. One doctor reported that Plaintiff walked with a "fairly fast style of gait," was able to ambulate normally, and could stand on her injured foot while reaching down to put a sock on the other foot. A.R. 24. Further the ALJ noted independent evaluations where the doctors did not find Plaintiff suffered complex regional pain syndrome, and a doctor felt that Plaintiff's subjective complaints "were grossly out of line with any abnormal objective findings." *Id.* at 23-24. With respect to mental health testimony, the ALJ noted

Dr. Johnson's report that suggested Plaintiff may have the tendency to exaggerate her symptoms. A.R. 25.

The Court finds these to be clear and convincing reasons for discounting Plaintiff's testimony, supported by substantial evidence. The ALJ may consider inconsistent statements and treatment providers' observations. The ALJ identified many instances where Plaintiff's claims did not match the relevant evidence, and did not err in finding that this undermined her credibility generally.

Plaintiff argues that the ALJ mischaracterized Dr. Johnson's report, which read in context does not suggest malingering, and that the ALJ relied improperly on one report of isolated improvement in Plaintiff's psychiatric treatment records. Doc. 18 at 18. But these isolated criticisms do not undermine the ALJ's broad findings that Plaintiff often overstated her symptoms. The Court finds the ALJ has provided "such relevant evidence as a reasonable mind might accept as adequate" to support her conclusion. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal citation and quotations omitted); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1. (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation the ALJ's decision must be upheld."). The Court will affirm the ALJ's finding on Plaintiff's symptom testimony.

### C. Plaintiff's Mental Work Capacities.

Plaintiff contends that the ALJ erred by limiting the consideration of her mental work capacities to understanding, remembering, and carrying out detailed job instructions, with only occasional interaction with the public. Plaintiff argues that the ALJ did not include her moderate difficulties with concentration, persistence and pace, asserting that these difficulties preclude her from performing the tasks outlined in the RFC. Doc. 18 at 20.

An ALJ must consider all of Plaintiff's impairments when determining the RFC. *See* SSR 96-8P, 1996 WL 374184, at * 5; *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004); *see also Lubin v. Comm'r of Soc. Sec. Admin.*, 507 Fed. App'x 709, 712 (9th Cir.

2013) (ALJ erred by not including the limitation in concentration, persistence, and pace in the residual function capacity determination). When considering the severity of Plaintiff's mental impairments, an ALJ must first assess Plaintiff's limitations and restrictions pursuant to the "Paragraph B" categories established in 20 CFR § 404.1520a(c) and 20 CFR § 416.920a(c)(3). *See* SSR 96-8P, 1996 WL 374184, at * 4; 20 CFR §416.920a(c)(3) (Four categories: understand, remember or apply information; interact with others; concentrate, persist or maintain pace; and adapt or manage oneself). Then, the ALJ must conduct a more detailed assessment of mental residual capacity by considering more detailed functions contained in these four broad categories. *See* SSR 96-8P, 1996 WL 374184, at * 4. For evaluating concentration, persistence, and pace, the mental residual functional capacity form includes questions regarding the Plaintiff's ability to follow detailed instructions. *See Andrews*, 53 F.3d at 1044; *see, e.g.*, AR 752-53.

In the step three assessment of the severity of Plaintiff's impairment, the ALJ determined that Plaintiff had moderate limitations in the area of concentration, persistence, and pace. A.R. 22. At the end of step three, the ALJ noted that her "[RFC] assessment reflects the degree of limitations [she] found in the 'paragraph B' mental function analysis." *Id*.

The ALJ did not mention concentration, persistence, and pace when presenting a hypothetical to the vocational expert. *See* A.R. 54. Instead, the ALJ asked the expert about a hypothetical individual who "can only occasionally understand, remember and carry out complex and detailed job instructions with only occasional interaction with coworkers and the public." A.R. 53. In the RFC, the ALJ concluded that the "claimant can only [occasionally][3] understand, remember and carry out complex and detailed job instructions, and can only occasionally interact with coworkers or the public." A.R. 23.

---

[3] The RFC in the ALJ's decision omits the word "occasionally" from the description of Plaintiff's understanding, remembering, and carrying out instructions. A.R. 22. Considering, the hypothetical posed to the vocational expert and the context of this omission, it appears to be a typographical error. *Id.* Because Plaintiff agrees that the ALJ limited her ability to "understand, remember, and carry out complex instructions

- 11 -

The Court concludes that the ALJ sufficiently considered Plaintiff's moderate concentration and persistence limitations by asking the vocational expert about limitations in understanding, remembering, and carrying out complex and detailed instructions and then incorporating these difficulties into Plaintiff's final RFC. These are the questions on the RFC intended to address limitations in concentration, persistence, and pace. See *Andrews*, 53 F.3d at 1044. Additionally, on remand, questions to the vocational expert and the ALJ's RFC considerations may change after the ALJ properly considers the treating psychiatrist's mental RFC evaluation. *See* A.R. 752-53.

**D.  Remand.**

The ALJ erred in failing to address Dr. Patel's opinion, and in her evaluation of Nurse Practitioner Banziger's medical opinion. Plaintiff contends that, crediting these opinions as true, the Court must remand for an award of benefits. Docs 18 at 23; 20 at 8. The Commissioner counters that the appropriate remedy is a remand for further proceedings. Doc. 19 at 6-7.

"When the ALJ denies benefits and the Court finds error, the Court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, the Court determines whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, [the Court] will then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

---

(see Doc. 18 at 20) and the record clearly indicates an intent to limit Plaintiff's abilities in that context (see A.R. 53), the Court will assume the word "occasionally" for the purposes of Plaintiff's argument. On remand, the ALJ should address this omission.

*Id.* (internal quotation marks and citations omitted). *Leon* emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step in the process. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

The Court concludes that further proceedings are necessary before a disability determination can be made. The ALJ erred in omitting Dr. Patel's assessment from the summary of medical opinions and in discrediting Nurse Practitioner Banziger's. Both professionals opined that Plaintiff's ability to stay on task and issues with concentration affect Plaintiff's ability to work. But the ALJ has not fully developed the record on Plaintiff's mental impairments because she never weighed Dr. Patel's medical opinion against the record as a whole.

Further, the Court is not convinced that the record, once proper weight and consideration is given to the medical opinions, would support Plaintiff's disability. *See Garrison*, 759 F.3d at 1021 (courts may remand if there is still doubt that a claimant is disabled). It is not entirely clear how the evidence would affect the vocational expert's testimony. During the hearing, the following exchange occurred:

> [Plaintiff's Attorney]: [To vocational expert] if we took a look at that first hypothetical and we added to that the non-exertional component of pain taking a person off task, let's say, 10, 11 percent, would that impact your answer?
>
> [Vocational Expert]: Yes, that person would not be able to do those jobs at anything over ten percent I think. The norm is about eight to ten percent.
>
> [Plaintiff's Attorney]: So, there would be no work for such an individual?
>
> [Vocational Expert]: Yes, or at least in unskilled.
>
> [Plaintiff's Attorney]: I don't know if this is enough for you, but at [nurse practitioner Banziger's report] we have an indication from the psychological source indicat[ing] poor concentration and [mood] variability.

> \* \* \*
>
> [Plaintiff's Attorney]: Is that sufficient enough for you to make an assessment?
>
> [Vocational Expert]: Well, not – no, but it is kind of to me equates to the off task behavior as far as concentration.
>
> [Plaintiff's Attorney]: So, kind of would indicate that maybe not a sustainable situation from a work standpoint?
>
> [Vocational Expert]: Yes

A.R. 55. The expert's response to Nurse Practitioner's Banziger's report was far from conclusive as to its effect on Plaintiff's ability to work.

Finally, the ALJ provided sufficient reasons for discounting Plaintiff's symptom testimony, which raises general questions regarding her disability.

The Court concludes that further proceedings before the ALJ would be useful.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 5th day of November, 2018.

*David G. Campbell*
David G. Campbell
Senior United States District Judge